First of the four this morning is number 18-1753, Westfield v. Icon Legacy Custom Modular Homes, et al., Mr. Rudd and Mr. Clark. Whenever you're ready. May it please the Court, I'd like to request three minutes for rebuttal. That's fine. My name is Jonathan Rudd and I represent the appellant, Icon Legacy, in this matter. I want to get right to the point. I know that the panel had sent out a letter to counsel asking us to be prepared for two issues, and I want to address those right off the top. They're interrelated and might overlap a little bit, but I want to address the issue of whether this is an appropriate issue to be certified to the Pennsylvania Supreme Court, and we would say it is an appropriate issue. Because? In order to clarify really the scope and breadth of Kavarner, your Honor, Kavarner made some general statements that have been widely interpreted as, in essence, barring all claims of faulty workmanship. Now, we haven't really seen it applied to the... Did Kavarner apply to a contractor or a sub? Kavarner, the Court addressed it in the terms of a contractor. There was a subcontractor involved, and the Pennsylvania Superior Court had addressed the subcontractor work exception and had found that that did apply and there was coverage. The Supreme Court did not address that issue, said it did not need to get to that issue because of how it resolved the issue of occurrence. So the Supreme Court has never addressed the issue of the subcontractor work exception and how does that interplay with whether faulty workmanship can be considered an occurrence in certain instances. If you really look at the cases that the Supreme Court relied on, they were all out-of-state cases for the most part. There was one Superior Court case that involved not a construction contract, it involved a maintenance contract. But for the most part, it relied heavily on out-of-state courts, and the one it gave a lot of deference to was the South Carolina Supreme Court. Since that time, in essence, all of the cases have relied on the courts in those situations have really narrowed or clarified, if you want to say, what is meant by saying property damage caused by faulty workmanship is not an occurrence. In Kverner, the key was the definition of occurrence, wasn't it? That is correct. It went down to what is expected and intended. Well, occurrence was an accident. Right, and they defined accident as something that is unexpected or unintended. Here, the endorsement has changed the meaning of occurrence to include property damage if the conditions are met. Isn't that correct? That is correct. That is correct. And was the endorsement in this case a direct response to Kverner? Well, we would submit it was, Your Honor. But another issue that I'm not going to really argue, it's in our briefing, is the fact that we weren't entitled to take any discovery as to really the origin of this endorsement at Westfield and its own interpretation that the judge denied our request for discovery. So we don't have a document that would be from Westfield's file saying this is the reason we promulgated it. But I think it's pretty apparent that this happened after Kverner. And it's in direct response to the issue that was left open in Kverner as to how do you address subcontractor work? Because if you look at Kverner in the big picture, it's hard to comprehend how anything would ever be covered under Kverner when you're dealing with a contractor. Because a contractor is only going to be sued if something went wrong. If something goes wrong on a construction project, it's likely there's going to be an allegation of some faulty or defective construction. Would it be fair to assume that this comes up fairly often in contracts? It comes up in virtually every construction project where there's an insurance claim. This is an issue that's constantly repeating. And if you look at, you know, the history, I know I went into it in the brief a little bit, the history of this subcontractor work endorsement, it was intended to provide some coverage for subcontractor work in recognition that in today's construction environment, the majority of work is done by subcontractors, not by the general contractor. The general contractor might do a certain element of it, but the majority of it is subcontracted out. And there was a recognition by both parties, the insurance industry as well as the insurance, that a general contractor who doesn't control necessarily how the subs are performing the work on a daily basis would want to have protection in case the subcontractor does something wrong. And that's the reason why that language was inserted into the subcontractor work exception. But isn't Covernor, I mean, the allegations there in the complaint was breach of contract and breach of warranty. That's correct. Which means the contractor didn't perform his job correctly. That's correct. Now, there was no allegation there that as a result of that, there were other problems that flowed from that. So the whole idea was that the contractor didn't perform according to the contract. I'm surprised you don't read Covernor as really relating to that situation where it's a contract between the two parties. And basically, they didn't, he didn't perform according to the contract. And we're not going to say that that's, you know, an accident. That had to be something that was, you know, could have been anticipated. That's right. I mean, I agree with that. It's, Covernor has been extended way beyond that. I mean, that was a specific factual situation. Where has Covernor been extended way beyond that? Well, the concept that any faulty workmanship that results in property damage just can't be covered. Covernor didn't even really involve property damage. As between the owner and the contractor. That's correct. It can't be a case where it's gone beyond the contractor and owner. Well, the, for instance, the Miller v. Gambone case, the Superior Court case, that expanded widely to cover a subcontractor. Now, that was distinguished in the Indelex case by the Superior Court. Again, pointing out that the negligence claims in that case had been dismissed at the preliminary objection stage. So there was only breach of contract cases left. But there are other many federal district court cases. I can't, you know, just tell you every one. But it has been expanded to cover property damage that goes beyond just the defective work itself. But you're correct in that sense that Covernor was limited to breach of contract and breach of warranty claims. And pointed out by its reference to the fact that it wasn't a performance bond. Pointed out that if a contractor just fails to perform its work properly, that's not something that's intended to be covered by liability insurance. It's not an accident as defined in that policy. Right. That's right. They just didn't complete properly. But the cases upon which it relied out of state point out that if a contractor fails to perform properly and its work results in damage to other property, whether it's, in some cases, whether it's even its own work product. There's cases in South Carolina, which again was relied on by the Supreme Court, where there had been defective, a number of cases, but some cases defective roofing, some cases defective siding that result in water damage. So even though the siding and the roofing is not covered and that's not disputed, if in fact it causes damage to the structure, if it causes damage to the tenants or the owner's property, that is covered. It's more than just faulty workmanship. It's damage that would be unanticipated. It would be indeed an accident. Right. That is correct. That's correct. So in our case, the allegations go beyond just a situation, first of all, involved all subcontract work. I kind of didn't perform any work on site, but primarily all of the allegations are that the subcontractor who set and erected these modular units did a poor job. You know, the one that's maybe the most classic example of an accident is the one in Vermont where they failed to properly either shingle or complete the roof system and there was major water damage as a result. The Massachusetts case involves allegations of water damage, but they were more of a slow and progressive nature because of how they set and installed windows in the siding. Whose job was it to make sure the subcontractors did the work correctly? The allegation would be that ICON ultimately is responsible for its subcontractor. But, you know, that's again, that would be a factual issue in terms of whether ICON had any duty to go and inspect the subcontractor work. That's not. What was the role of the contractor then here? In other words, you contracted with three individuals or three families or whatever, but what responsibility did the contractor have in order to make sure that the job was done correctly for these three homes? Well, the use of the term contractor is a little bit confusing. Because there is a builder. There's a builder who was in charge of the overall responsible for this project. So ultimately the builder was responsible. But the allegation is that that builder in effect is ICON's subcontractor. So it's really the subcontractor who had responsibility and in some cases subcontractor subcontracted out the work. They really had the responsibility to make sure that everything. Who entered into the contract with the homeowners? The subcontractor or builder? Who entered in really the contract? Yeah, ICON did not have the contract with the homeowners. ICON had a contract with a builder who had to contract with the homeowners. And the allegation though is that the builder in effect is ICON's subcontractor. That they were acting on behalf of ICON when they contracted with the owner. So this is a precarious liability case. Who was the builder? Was it the same builder for all three? No, there were different builders in all three cases. They're different states and different builders. Was the contracted work for Masana ever completed? The Masana house was not completed. But the work that ICON was responsible for was completed in terms of the set and erection of the home. And in all cases that was completed. Whether the home, there was heating systems that had to be installed by the builder, that was not done. So your complaint alleges that there was a duty to defend by Westfield of the Masana complaint because it alleged emotional damage. But this is a property damage case, right? It's primarily property damage. But they did allege that they had emotional distress that resulted in symptoms of physical injuries. And they had medical records to try to document that that was in fact the case. That would be a liability policy then? That would fall under the comprehensive general liability policy. It's the same policy that would cover both bodily injury and property damage. All right, let's hear from Mr. Clark and then we'll get you back on rebuttal. Good morning, your honor. May it please the court. My name is Jim Clark here on behalf of the Appellee Westfield Insurance. What is your perception of what should happen in connection with the question we asked pertaining to certification? I do not believe that this case is appropriate for certification of the Pennsylvania Supreme Court. The first reason, your honors, is that the issue of subcontractor faulty workmanship being unexpected and unintended from the standpoint of the insured contractor or subcontractor is well settled in Pennsylvania. While Coverner focused primarily on contractors, there was a subcontractor role at issue there. Subcontractors actually recovered. Under footnote 11, it's noted that some contractor insurance was already collected by the owner. Here, the allegations in the complaint, which we're bound to follow under Pennsylvania's Four Corners rule, are both that ICON themselves committed faulty workmanship and the subcontractor. Obviously, we're looking at the collectability under the policies for ICON. But the Pennsylvania Superior Court in Gambone extended the holding of Coverner to apply to subcontractor faulty workmanship. They took the same reasoning as decided by the Pennsylvania Supreme Court in Coverner about the fortuity and the accidental nature of subcontractor faulty workmanship. Well, but it also said a scenario could arise where it confuses the job orders, and then it could be an occurrence, and then it could obviously be accidental. So they're saying subcontractor could fit and could be accidental, whereas a contractor is not accidental. I don't see how that helps you. What Gambone is actually saying there, your honor, is they put forth hypothetical scenarios that could fit the subcontractor exception to the damage to your work exclusion. And what the court said is that there are damages that could occur that wouldn't necessarily be the result of faulty workmanship. It could be something that's truly accidental. Subcontractor does work on a job, completes the work, does the work well. It's not faulty. It's defective. They theorize that there could be something truly accidental that happens. There could be scaffolding, for instance. But would you not agree that Coverner turned on the definition of occurrence? I would agree that it did turn on the definition of occurrence. And what was the definition of occurrence in that case? An occurrence is something that's accidental. It's not fortuitous. What's the definition of occurrence under this endorsement? The definition of an occurrence under this endorsement, I would submit, your honor, is exactly the same as Coverner. Not what it says. The endorsement says an occurrence will be deemed to have occurred when there's property damage that fulfills the three conditions. Why should we not look within the four corners of the endorsement to decide that property damage, if it's defined as an occurrence, not accidental, qualifies? It's slightly different, your honor. It says that the property damage will be extended to have been called by an occurrence, but only if the three prongs are met. But it says an occurrence will be deemed to have occurred if property damage fulfilled by the three conditions. And I'm not debating, your honor, that you need to look within the, that it does amend the insuring agreement. I don't, I don't, I think that's different than the premise that it eviscerates Coverner's definition of an occurrence. And I think it's significant that the language of the third prong of the endorsement mirrors the logic of Coverner, Gambone, this court, Judge Sirica's opinion, and Shoemaker. But it says in the eyes of the insured. It absolutely says in the eyes of the insured. But that's also the same perspective that every court has, analyzing the issue of subcontractor faulty workmanship, you know, which there have been many. There's been, after Coverner, there was Gambone. This court in Shoemaker adopted the holding of, of Gambone and Coverner to extend the no occurrence for faulty workmanship logic to subcontractors. Every case that's looked at it has looked at it from the perspective of, of the insured contractor. It's your position that there's no need for the Pennsylvania Supreme Court to clarify the law in this area, that everything is settled? Yes, Your Honor. It's my position that this issue has been settled. It's been, you know, adopted over and over again by every Pennsylvania court. This, this notion that subcontractor faulty workmanship is not unexpected or unintended from the standpoint of the insured. While, while my colleague cites two cases that are from out of state, you know, he cites to the Beach case, which was the 10th Circuit looking at New York law. And, you know, that, that case doesn't get a Pennsylvania law. Charrington was a West Virginia case that in the text itself speaks to the fact that Pennsylvania law is settled on this issue and is different than the way the West Virginia court came down. So I think that this, this case is not appropriate for certification. The other important note about certification, Your Honor, is that this is only one of the three prongs that the appellate would have to satisfy. The, the outcome is not determinative. If the Supreme Court were to agree with my colleague's position on the impact of the language in prong three, we believe that prongs one and two of the endorsement, that the work was done entirely by subcontractors. And that the work was within the promised completed operation hazard, in other words, complete, would not be satisfied by a true four corners analysis of the underlying complaints. Well, but the idea of the work performed entirely by the subcontractor or the damage caused entirely, I mean, that remains to be seen. It's possible that as discovery proceeds, I mean, one of two things could happen. The subcontractors, there were no subcontractors, they did nothing. Or it appears that the subcontractors might have been entirely responsible for this. So it remains to be seen. And as long as that's a potential, then there's still the duty to defend, is there not? I would disagree, Your Honor, that you can look to the, you could expand the four corners to that breadth. You have to look to the four corners and strictly construe the text of the, of the underlying complaints, all of which tie ICON itself to the faulty workmanship. But it ties, well, it says ICON or its agents or assigned. So it, you don't know. Nobody knows right now exactly who caused it. But, but the endorsement, Your Honor, says that the, that the work has to have been entirely the result of the subcontractor. And it may be, it may be upon proof that it was. We don't know. And until that's determined, it seems to me there's a duty to defend. Well, that's, that's prong one, Your Honor. I mean, prong two, there are omissions in the record. But let's go back to prong one for a second. Why isn't there the potential that all the work could have been done by the subcontractors, as your opponent noted in the opening? Because it's just simply not play, Your Honor, that all the work was done. Not play at all. It's not play. All of the damage that is alleged intertwines the appellant with the purported subcontractors or, or agents. There is no allegation. We're not asking for an allegation that, that every bit of the damage has to be entirely performed. We're asking that any of the damage is alleged to have entirely performed by the subcontractor. Well, it could be that ICON manufactured a perfect, you know, houses and delivered them to the job. And the subcontractors, they were fine, but the subcontractors who put them together or installed them, in all cases, you know, were the ones who, who committed the, you know, the, the faulty work. And, Your Honor, I would submit that that's a hypothetical that is extrapolated from. There's a potential that could be the case. And if there's a potential that could be the case, then you have a duty to defend. That's a, I think, a very broad interpretation, Your Honor, that the court in Lupo recently, your opinion, Judge Ambrose, had a much more seemingly narrow view of what must be alleged in the four corners of the complaint. You can look to the facts to see scenarios that, you know, may or may not ultimately come true. Different case. Here, there, there are facts not known. The question is, do we go beyond and allow some discovery here? The first question, I mean, you, you, you, you, I guess, may be right, but they're not, and in the appellate court, doesn't mean much. Your Honor, I think, I think there may be some facts, but the key is whether or not they're pled in the four corners of the complaint. And our argument is that they are not pled. That the damage being entirely the work of the subcontractor is not found within the four corners of the complaint. In fact, it is pled the opposite. It intertwines ICON and their purported subcontractors or agents in every allegation. I, but the court would need to find that all three of the prongs are satisfied. So with respect to prong two, there are admissions in the record that the work was not complete. What about the second prong? That's, that's what I'm referring to, Your Honor. Within the products completed with operations hazards, aren't there questions relating to whether the work was completed? There is no, again, Your Honor, taking it back to the four corners rule and looking at the allegations as pled. Each one of the underlying complaints plead that the allegation, that the work was not completed. So right there, applying a four corners analysis to the endorsement itself and being cognizant of the fact that the appellant would have to satisfy all three prongs. Even if the court found that we were dead wrong on prong one, dead wrong on prong three, the third issue is not outcome determinative and therefore doesn't warrant submission to the Pennsylvania Supreme Court. Which brings us to prong three and the question about certification. It isn't just this case that you would certify it for. You, it was, you're trying to get for cases down the road, what is the law in Pennsylvania pertaining to whether something is unexpected and unintended from the standpoint of the insurer? You know, again, Your Honor, I think that that issue has been dealt with. It's been dealt with in Covertor, it's been dealt with in Gamboan. What did Gamboan say? Gamboan talked about, extended the holding of Covertor to subcontractor case and says that the faulty workmanship is not unexpected, unintended from essentially anyone's standpoint, Your Honor. It applied the same rationale from Covertor and extended it to subcontractors. So what, and Your Honor, if I may, go ahead, if I may note that the policyholder in that case petitioned the Supreme Court for review and the court declined to hear the appeal in that case. What did, what good did the endorsement do here? The endorsement, you know, I believe, and there's no evidence in the record one way or the other, and I think that that, you know, we don't look to the specific intent given that the appellate has conceded that the language is unambiguous. But my theory, Your Honor, is that the endorsement would have codified the hypothetical scenario as forecasted by Gamboan. It would have provided coverage to the appellate for completed work done entirely by subcontractors that is truly accidental and not faulty workmanship. You know, I was starting to say before. Work is done 99.5% by subcontractors, but 0.5% something is done by the contractor. You're saying that's not going to get covered? Under a plain language reading of that endorsement, Your Honor, I do not. So what good is the endorsement? But I don't believe the endorsement covers faulty workmanship. I think it covers the truly accidental damage caused by your subcontractor. Subcontractor finishes the job. They're getting ready to leave. They're breaking down scaffolding. The work is done perfectly. The scaffolding collapses and ruins the finished job. That's truly an accident. That's not faulty or defective work. That's something different that was accidental. Subcontractor is leaving, backs a truck into a piece of property they just finished. So you don't need the endorsement. You've got an accident. Well, if the appellant were sued in that case, they would have coverage for that. You know, there would be a defense in that case because it's truly accidental. But wouldn't they have coverage under the main policy as opposed to the endorsement? Say that again, Your Honor. Wouldn't they have coverage under the main policy as opposed to the endorsement? I think not necessarily because the subcontractor is not a named insured here through their policy. So I can foresee a scenario where the insurance company would say, hey, that's not our, you know, that's not something that is damaged that you caused. So therefore, there's no coverage. This endorsement provides them the protection of giving them coverage for truly accidental work caused by their subcontractor. All right. Thank you. Thank you. Mr. Rudd. Mr. Rudd, do you agree with his reading of Miller's? Yeah, Miller was very, very broad. And it basically expanded Kovarner to a subcontractor's work. I mean, again, it was distinguished by Superior Court, again, an indelex. They sort of try to back off of it. Right. But it was a very broad decision. And it definitely has created a lot of, my view, a lot of confusion because many federal district court cases have now followed Miller and said, well, Miller, you know, basically is now the law of Pennsylvania when the Supreme Court has not specifically ruled on that. Again, Miller is a fairly old case. And if you look at all the recent cases in other states, it's really in the last, you know, five, six years that there has been this backing off of this hard and fast rule that faulty workmanship is not covered. But there was one thing I wanted to point out. The certification of this type of issue is not unique. The 11th Circuit certified this specific issue to the Georgia Supreme Court in 2013 in order to get clarity rather than deciding itself. And interestingly, the Fourth Circuit did recently try to predict how the Virginia Supreme Court would rule. And there was a pretty strong dissent saying that did not feel that was appropriate, that they should have certified the question to the Virginia Supreme Court. So rather than, you know, this court continually have to try to predict how the Pennsylvania Supreme Court would rule on these type of issues, especially where there's more and more of these type of endorsements. This is just one of many different endorsements have come out since Converter addressing this issue of subcontractor faulty workmanship. And I don't think there's any question that this applies to faulty workmanship. It's not an accident. What they said in Gambone wasn't even workmanship. The example they gave was if they go to the wrong project and do the work properly, but they show up at the wrong project or if they buy the wrong materials. That's not the type of workmanship that this endorsement even covers. This endorsement is very clear. It says subcontractors work and as the panel has pointed out, vehicular damage would be covered under the main policy. Anyhow, you don't need this endorsement for that. So it is a very important issue and I agree that it goes beyond just the specific facts of this case. It would be very helpful to the construction industry and the insurance industry in the future to know exactly what is going to be the scope of coverage for a subcontractor's work. And it seems appropriate to certify. Thank you. Thank you very much. Thank you to both counsel for well presented arguments and we'll take the matter under advisement.